### LIGHT v. CONNECTICUT GEN. LIFE INS. CO.

### No. 2454.

District Court, W. D. Louisiana, Shreveport Division.

Nov. 27, 1940.

Chandler Furman, of Shreveport, La., for plaintiff.

E. W. & P. N. Browne, of Shreveport, La., for defendant.

PORTERIE, District Judge.

William R. Light had worked for the Gulf Refining Company for over ten years when, on the 4th of April, 1932, he was discharged. He had worked always in Louisiana except from February, 1932, until his discharge, during which time he worked in Texas, having been transferred there. For the period of ten years in Louisiana he was a roustabout in oil drilling work. This entails heavy manual labor. The work in Texas was relatively light: oil pumping, the checking and supervision of flow of oil in pipelines, digging small ditches, etc. It is evident that he had become physically unable to perform the work of a roustabout and the company was easing his labors. Light took his discharge resignedly at the age of forty-three, with his wife and three children, six, eleven and twelve, to support.

As early as 1923, he claimed he had vomiting spells while on the derrick job

692

and had to be replaced on the job several times. He suffered from heat prostration. These attacks continued intermittently until 1931–1932, when he had to be absent from work for as long as a period of four days.

Light did nothing, filed no notice of claim, and remained silent until April 29, 1933, when he filed suit against the Connecticut-General Life Insurance Company of Hartford, Connecticut, in one of the state courts. The gist of his claim is for fifteen hundred dollars for permanent total disability arising on and existing as of the 20th day of May, 1932, plus another fifteen hundred dollars as double penalty, with no reason alleged in support, plus another fifteen hundred dollars as reasonable attorney's fees—a total of four thousand five hundred dollars.

The suit was promptly removed to this federal court. Then followed many vicissitudes of and delays in pleading, all unimportant and consequently not recited here, with the result that the case was not tried until the 16th of November, 1939. At the end of trial, the court issued an order of subpœna duces tecum so that the master group policy controlling the contractual relations between the plaintiff and the defendant might become a part of the record. This policy was filed on May 25, 1940. Then, the case was briefed by both sides for the help of the court.

■ An examination of this master policy, G 5039–R, shows the amount of insurance to which plaintiff would be entitled as $4,000, because he had "7 or more years of continuous service" and was under the salary class 1–B. His claim is for $4,000; therefore, this court has jurisdiction, as we are prone to let the prayer for general and equitable relief in his petition apply in his favor.

Master policy G 5039–R embodies the contract in this case. At page 8 there is the specified provision "and no claim for permanent total disability incurred by any employee during his period of employment shall be paid after the termination of such employment unless such employee gave written notice of such disability to the Company during the said period of employment or within 60 days thereafter."

■ Pretermitting the point as to plaintiff's permanent total disability existing during his employment, or immediately thereafter within sixty days, it is impossible for the court to accord any judgment to plaintiff in the face of his want of having given any "written notice of such disability" before April 29, 1933, the date suit was filed, when his discharge from employment and, consequently, the cessation of his insurance, was on April 4, 1932.

The case of Boseman v. Connecticut-General Life Ins. Co., 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036, 110 A.L.R. 732, is in point, having the same defendant, the same master group policy, the same legal issue of want of timely notice. The case when in the Circuit Court of Appeals, 5 Cir., 84 F.2d 701, at page 705, is directly in point when it says: "Boseman did not give notice of claim even within the 90 days mentioned in the Texas statute, but more than 6 months after his employment ceased and after he received the rebate of premium which marked the cessation of his insurance. He is not entitled in the face of his contract and of the law under which he agreed that it was being made to assert such claim."

The total and permanent disability of the plaintiff to do the work for which he was employed was established as existing on the day of trial, November 16, 1939, but the evidence is not nearly preponderant that the deafness of the plaintiff (his only physical defect and ailment) was to such a degree as to render him totally and permanently disabled at any time during the year of 1932, the year of his discharge from employment and seven years before the trial. We are satisfied that his present deafness of 100% in one ear and 90% in the other has been the gradual result of the heat prostrations initially suffered while in the employ of the Gulf Refining Company, but we find no provision of law permitting us to reach out, beyond the contract, to protect plaintiff.

■ There is an additional point barring the plaintiff from recovery. He cannot now earn a livelihood at his former occupation, but he does admit having farmed in Texas since his discharge and, with the aid of his wife and others, has raised some crop each year, the maximum yearly yield having been as much as seven bales of cotton, and that in the year 1933, the year following his discharge. We could not say that even his present disability "will prevent (him) from pursuing any occupation for wages or profit", in the words of the policy fixing what is "Permanent Total Disability."

Plaintiff's case must be dismissed, and judgment to that effect will be signed.