284 So.2d 83 (1973)
Charles F. RAY
v.
CITY OF NEW ORLEANS.
No. 5639.
Court of Appeal of Louisiana, Fourth Circuit.
September 26, 1973.
Rehearing Denied November 2, 1973.
Writ Refused December 19, 1973.
*84 Levy, Smith & Pailet, Lawrence J. Smith, New Orleans, for plaintiff-appellant.
Blake G. Arata, City Atty., and Jackson P. McNeely, Frank J. Varela and R. H. Belknap, Asst. City Attys., New Orleans, for defendant-appellant.
Before SCHOTT, ST. AMANT and LeBRUN, JJ.
SCHOTT, Judge.
Defendant has appealed from a judgment in favor of plaintiff awarding full workmen's compensation benefits for total and permanent disability at the rate of $45.00 per week for 400 weeks from August 1, 1968. In answer to the appeal, plaintiff has asked for penalties and attorney's fees as well as damages for frivolous appeal.
Plaintiff was appointed a member of the New Orleans Fire Department on June 1, *85 1948. On June 25, 1968, while fighting a fire at the Maison Blanche Building in the City of New Orleans, he began to feel badly and to experience chest pains. On July 29 upon examination by Dr. J. Donald Persich he was declared permanently disabled because of angina. On August 2 he was placed on sick leave by the City of New Orleans and continued to draw sick leave until July 1, 1970, when he retired. He filed this suit on May 5, 1970, and was met with an exception of prescription under LSA-R.S. 23:1209 together with an answer in which the City denied causal connection between plaintiff's occupation and his illness.
The trial judge in reasons for judgment found "that plaintiff herein suffered numerous attacks of angina pectoris, all of which were primarily job related and that finally the plaintiff suffered a final disabling attack of angina pectoris while fighting a fire approximately July 30, 1968.
"Further considering the evidence, the Court finds that this attack on approximately July 30, 1968, was a contributing factor in the plaintiff's disability and that therefore his disability was caused by an accident related to his job."
These conclusions are amply supported by the record. After having him as a patient since 1960 in which he repeatedly complained of chest pains and demonstrated symptoms of angina on a number of occasions, the doctor concluded that the stress and strain of plaintiff's occupation produced the angina attacks and that these angina attacks produed microscopic damage to the heart which finally manifested itself in the electrocardiogram he performed on the plaintiff following the Maison Blanche fire in July of 1968, and with reasonable medical certainty these job connected episodes of angina were causal factors for his ultimate disability. There is no contradictory medical testimony.
In addition to the fact that the record supports the trial judge's findings we are also referred to LSA-R.S. 33:2581 which provides as follows:
"Any disease or infirmity of the heart or lungs which develops during a period of employment in the classified fire service in the State of Louisiana shall be classified as a disease or infirmity connected with the employment. The employee affected, or his survivors, shall be entitled to all rights and benefits to which one suffering an occupational disease is entitled as service connected in the line of duty, regardless of whether the fireman is on duty at the time he is stricken with the disease or infirmity. Such disease or infirmity shall be presumed, prima facie, to have developed during the employment whenever same is manifested at any time after the first five years of employment."
Under this statute the plaintiff made a prima facie case and there is no evidence to rebut this presumption in his favor that his disability was an occupational disease under the statute and is therefore compensable. See Landry v. City of New Orleans, 266 So.2d 492 (La.App. 4th Cir. 1972)
The serious problem posed for our consideration is that of prescription and an approach to that problem requires an examination of the cases of Guerrera v. City of New Orleans, 212 So.2d 223 (La.App. 4th Cir. 1968) and Dupaquier v. City of New Orleans, 260 La. 728, 257 So.2d 385.
Until the Guerrera case it was assumed by the City that sick pay included workmen's compensation so that while a fireman was enjoying the status of receiving sick pay after a work connected disabling accident the one year prescription for workmen's compensation purposes was not considered to be running, but in Guerrera a judgment in favor of a fireman against the City which allowed the City a credit against workmen's compensation liability for the amounts included in sick pay was amended and it was held that such sick leave benefits are payments earned by the employee for past services rendered and none *86 of such benefits can be deducted from or credited to workmen's compensation.
When Dupaquier first came to this Court (242 So.2d 331) the issue was resolved against the fireman to the effect that his workmen's compensation claim had prescribed because he had been injured on March 11, 1966, received sick leave benefits until October 23, 1968, but did not file his suit for workmen's compensation until December 20, 1968. Since this Court had already held in Guerrera workmen's compensation benefits were not included in the sick pay this Court concluded that the one year prescription began to run on March 11, 1966, and consequently plaintiff's suit had prescribed under LSA-R.S. 23:1209.
The Supreme Court reversed following the general proposition that when an employer lulls an employee into a false sense of security causing him to withhold suit until the prescriptive period expires the employer cannot invoke the one year prescription to defeat the plaintiff's claim for compensation. The Court, while noting that no City official personally misinformed plaintiff as to the nature of the sick leave payments, found that the fire department officials contributed to the misinformation upon which plaintiff relied because the president of the Firemen's Union had inquired about the nature of the sick leave benefits and the Fire Chief had informed him that the benefits included workmen's compensation. The president then made this announcement at the Union meeting. Furthermore, the Court found that this information had been disseminated orally among the firemen so that plaintiff reasonably believed that his sick leave benefits included workmen's compensation. Overruling the plea of prescription the Court observed that there would be an obvious injustice perpetrated on the plaintiff if the prescription were maintained and that a liberal application of the workmen's compensation statute militated in favor of overruling the one year prescription under the circumstances.
Plaintiff relies on Dupaquier and insists that his case cannot be distinguished from it.
Plaintiff testified that he consulted with the former Union President, Mr. Sanchez, at some point in time after his going on sick leave and was told that the sick leave benefits included workmen's compensation so that he should not file his claim for such until placed on disability pension. Sanchez had been killed in an accident but Mr. Oliver Bayard testfied that during his tenure of office as president of the Firemen's Union between 1963 and 1967 he had been told by Fire Chiefs Day and Heyd that workmen's compensation benefits were included in the sick pay; that he was always under this impression; and that he and his successor, Mr. Sanchez, passed this information on to the firemen. Furthermore, plaintiff testified that this impression that sick leave benefits included workmen's compensation generally prevailed among the firemen based upon his conversation with the men throughout the City. No objections were made to any of this testimony on the basis of hearsay and the evidence is not contradicted. We conclude that this evidence is sufficient to place plaintiff in the same position as Dupaquier was placed and which led the Supreme Court to hold that under the very unusual circumstances existing there he was entitled to workmen's compensation even though benefits were not included in the sick leave benefits he had been receiving.
There is one further issue in the instant case which strengthens plaintiff's position and which was not raised in the Dupaquier case. Act 165 of 1966 (LSA-R.S. 33:1995.1) which became effective on July 27, 1966, provides as follows:
"Sick pay reduced by workmen's compensation
A fireman employed by any municipality, parish or fire protection district who draws full pay during sickness or incapacity shall have such pay decreased by the amount of workmen's compensation *87 benefits actually received by the employee."
This statute had no application to either the Guerrera case or Dupaquier case because each plaintiff's injury and his drawing of sick pay occurred prior to the effective date of the act, but the act was in full force and effect at the time of plaintiff's final injury when he first drew sick leave benefits.
Under the terms of this act had the City put the plaintiff on workmen's compensation voluntarily as of August 1, 1968, it clearly would have had the right to deduct those compensation payments from the salary being paid to plaintiff as sick pay, but the City has consistently taken the position that it owed no workmen's compensation benefits to plaintiff and has strenuously contended that workmen's compensation was never included in the sick pay as the basis for its plea of prescription. While we do not find that the City has paid workmen's compensation benefits while it paid the sick pay to plaintiff, the language of this statute and the City's action (as testified to at the trial by plaintiff's attorney) in splitting paychecks issued to firemen who are paid sick leave benefits and as to whom no disputes exist as to liability for workmen's compensation benefits certainly added to the confusion among firemen about the nature of the sick pay benefits which the Supreme Court found existed in the Dupaquier case and aggravated the misimpression under which plaintiff testified he and other firemen labored in the instant case.
While it is often difficult to learn the legislature's motive behind the passage of a given statute, an analysis of this one leads to a conclusion that the legislature wished to provide an incentive to municipalities to make early workmen's compensation settlements with injured firemen. The municipality is in the position where it owes sick pay regardless of the cause of the incapacity in most instances.[1] Thus, when a municipality becomes clearly aware of its obligation to pay sick pay and is faced with a decision as to whether an injury might also be compensable under the workmen's compensation statute it would behoove the municipality to give to the employee the benefit of any doubt and to pay workmen's compensation, thereby getting the benefit of the credit against sick pay "of the amount of workmen's compensation benefits actually received by the employee." By making the choice which the City has in the instant case it is now in the unhappy position of having paid sick pay to plaintiff from August 1, 1968, to July 1, 1970, steadfastly refusing to recognize any workmen's compensation liability to that employee and now being unable to gain any credit against that sick pay for the amount for which it will now be cast in workmen's compensation benefits. While it seems that the plaintiff is getting the best of two worlds, this unusual situation was created not by him but by the City and consequently we find no reason why plaintiff should be penalized.
We do not hold that R.S. 33:1995.1 has the effect of overruling the Guerrera and Dupaquier decisions since this statute does not say in so many words that sick leave benefits include workmen's compensation benefits. The statute simply gives the municipality which chooses to pay workmen's compensation benefits to an injured employee the right to a credit for such benefits against the sick pay benefits that it owes to the employee in any event.
It is our conclusion that the record supports the trial judge's determination that plaintiff was in basically the same situation as was Dupaquier and therefore is entitled to the same treatment. Furthermore the passage of R.S. 33:1995.1 and its implementation by the City served to aggravate the misimpression existing among the members of the fire department as to the nature of such sick pay benefits and thereby strengthens plaintiff's claim for an extension of the Dupaquier case to include his own case.
The judgment provides for compensation benefits in the amount of $45.00 per week *88 for 400 weeks from August 1, 1968. Defendant has correctly pointed out that as of August 1, 1968, the maximum weekly benefit was $35.00 per week and the change to $45.00 per week made by Act 25 of the Extraordinary Session of 1968 did not become effective until January 6, 1969, so that the judgment will be amended in that respect.
However, in all other respects the judgment of the trial court is affirmed. As for plaintiff's appeal for the imposition of statutory penalties and attorney's fees as well as damages against the City for taking a frivolous appeal, there is no showing that the City's action was arbitrary, unreasonable or without probable cause or that its appeal was in any way frivolous from the judgment of the trial court. See Dupaquier v. City of New Orleans, 271 So.2d 78 (La.App. 4th Cir. 1972).
The judgment appealed from is affirmed in all respects except that the amount of weekly compensation benefits of $45.00 is amended to read $35.00.
Amended and affirmed.
NOTES
[1] LSA-R.S. 33:1995 excludes incapacity which is brought about by the negligence or culpable indiscretion of the employee.