824 So.2d 448 (2002)
John L. ROMAGOSA
v.
LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT.
No. WCW01-1600.
Court of Appeal of Louisiana, Third Circuit.
May 29, 2002.
Writ Denied October 4, 2002.
*450 Charles E. Soileau, Bertrand & Soileau, Rayne, LA, Counsel for: John L. Romagosa.
Julie Koren Vaughn Felder, Attorney At Law, Lafayette, LA, Counsel for: Lafayette City-Parish Consolidated Government.
Court composed of HENRY L. YELVERTON, JOHN D. SAUNDERS, and JIMMIE C. PETERS, Judges.
YELVERTON, J.
In this workers' compensation matter brought by the injured employee, both sides applied for writs. We consolidated the applications and called them up for arguments and a full opinion.
The issues presented by the applications are in limine rulings made on the morning of trial; the case has yet to go to trial, and the trial court has stayed its proceedings for these applications. The employer provided benefits following an injury, then discontinued them, then reinstated them retroactively. So, the only factual determination for the workers' compensation judge to make when the case goes to trial is whether the employer's termination was arbitrary and capricious such that the claimant will be entitled to an award of attorney fees and penalties.
The injured employeeclaimant, John L. Romagosa, is a captain in the Lafayette Fire Department. The employerdefendant is the Lafayette City-Parish Consolidated Government (LCG). Captain Romagosa is a civil servant. The principal matter before us in the writ applications is what Romagosa believes is an impermissible encroachment of the application of workers' compensation laws on his civil service rights. Because the case is at the pre-trial writ stage and no evidence has been adduced, the following assumed "facts" are taken from the briefs in support of the applications and oppositions, and the documents and exhibits filed with them.
In May of 2000, Romagosa injured his left wrist while pulling down ceiling tiles at a fire call. He aggravated the injury a few days later at another fire call. LCG provided surgery and workers' compensation benefits. In late April of 2001, his treating physician released him to light duty with the limitation that he not lift anything heavier than three pounds with his left arm.
On May 1, 2001, an adjuster with the LCG risk management department wrote to Romagosa and instructed him to request reassignment to light duty from the fire chief. Romagosa did so, and on May 11, 2001, the fire chief directed Romagosa to report for light duty at the fire department training center. Romagosa reported for work at the training center and was assigned clerical duties.
On May 13, 2001, Romagosa filed a complaint with the Lafayette Municipal Fire and Police Civil Service Board stating as follows:
"I am requesting a hearing concerning my light duty assignment on the Lafayette Fire Department which, in my opinion, is discriminatory and in violation of Louisiana State Civil Service Law."
On May 29, 2001, Romagosa's attorney sent a letter to the human resources manager of LCG objecting to his assignment to light duty at the fire department's training center. The letter stated it was Romagosa's position that the only duties applicable to his job classification were those of a fire *451 captain, and it cited as the statutory authority for this position Louisiana Revised Statute 33:1995[1]. The letter contained this paragraph: "We suggest that Captain Romagosa should either be paid worker's compensation benefits or sick leave pay until he is fully released by his physician to full duty as a Fire Captain."
After they got this letter, the fire department officials, on June 1, 2001, ordered Romagosa to go home from the training center, and he did so. LCG began paying him sick leave. Then, on June 5, 2001, a supervisor with risk management of LCG wrote Romagosa informing him that his workers' compensation benefits were terminated because of his refusal to perform the light-duty work offered. On June 8, Romagosa's attorney wrote a letter demanding reinstatement of his benefits.
Romagosa filed a claim with the Office of Workers' Compensation on June 8, 2001, seeking reinstatement of benefits, penalties, and attorney fees. When he was again ordered to light duty at the training center by the fire chief on July 5, 2001, he reported. Benefits were then reinstated retroactively.
On July 10, 2001, the civil service board heard the matter before it and decided that the light duty assignment was not within John Romagosa's job classification as a fire captain. The entirety of its decision was: "The evidence and testimony presented to the Board established that the Light Duty assignment was not within John Romagosa's job classification as Fire Captain." The LCG fire chief then ordered Romagosa's assignment to the fire line.
Against this backdrop of developments, on the morning of the scheduled date for the hearing of the workers' compensation matter, which, as stated earlier, was limited to the question of whether penalties and attorney fees were due because of the June 5, 2001 termination of benefits, LCG made an oral motion in limin e requesting two rulings. First, LCG wanted to know whether the judge had jurisdiction to determine "whether workers' compensation law supercedes civil service law" in the case. Second, LCG wanted a ruling as to "whether workers' compensation law can mandate a civil service employee to work outside of his classification but within his physical limitations." Not fully answering the first question, the workers' compensation judge limited her ruling to stating that she did not have jurisdiction over civil service matters, the result being that she would not consider any evidence pertaining to civil service issues. She ruled in response to the second question that pursuant to workers' compensation law, a claimant could be made to work within his physical limitations even if it was outside the civil service job classification. These are the two rulings challenged by Romagosa in his writ application, which bears our number WCW01-1600.
After the trial judge made these two rulings on LCG's motion in limine, counsel for Romagosa made his own oral motion in limine, which was to exclude from evidence at the trial the letter he wrote to the human resources manager of LCG in which he stated, "We suggest that Captain Romagosa should either be paid workers' compensation benefits or sick leave pay until he is fully released by his physician *452 to full duty as a Fire Captain." Anticipating that LCG would offer this letter as evidence that Romagosa was thereby refusing to accept light duty, as a defense to the claim that it was arbitrary and capricious in terminating benefits, Romagosa sought that letter's exclusion on the ground that it, too, pertained to civil service matters beyond the jurisdiction of the workers' compensation judge. The judge agreed that that letter was inadmissible as evidence, and LCG challenges that ruling in its writ application, which bears our number WCW01-1582.
For the reasons which follow, we shall deny Romagosa's writ application, and we will grant and make peremptory the writ applied for by LCG. A separate judgment will be handed down today in Romagosa v. Lafayette City-Parish Consolidated Government, WCW01-1582 (La.App. 3 Cir. 05/29/02), 824 So.2d 456.

ROMAGOSA'S WRIT APPLICATION

1.
The workers' compensation judge ruled that she had jurisdiction over workers' compensation matters only. Romagosa argues that this was wrong, claiming that she also "has jurisdiction to hear issues dealing with Civil Service employees." As we understand his argument, it is that Romagosa's interest in his job classification is a constitutionally protected property right, that it cannot be taken away from him by application of the workers' compensation laws, and that the trial judge must apply civil service laws and restrict light duty assignments to the civil servant's job classification. He argues that the civil service issues and workers' compensation issues are inextricably "intertwined."
The judge in this case ruled merely that she had jurisdiction to hear and decide workers' compensation issues dealing with civil service employees. That was the extent of her ruling. That ruling was correct.
Under authority of Louisiana Constitution Article 5, Section 16, the Louisiana Legislature has vested the workers' compensation judge with "original, exclusive jurisdiction over all claims or disputes arising out of this Chapter...." La.R.S. 23:1310.3(E). If the issue to be considered arises out of the workers' compensation Chapter, jurisdiction is vested in the Office of Workers' Compensation. Ellender's Portable Bldgs., Inc. v. Cormier, 00-1724 (La.App. 3 Cir. 6/6/01), 787 So.2d 601.
The workers' compensation chapter applies to injured civil servants. Louisiana Revised Statute 23:1034(A) provides in part (emphasis ours):
The provisions of [the workers' compensation] Chapter shall apply to every person in the service of the state or a political subdivision thereof, or of any incorporated public board or commission... and for such employee and employer the payment of compensation according to and under the terms, conditions, and provisions set out in this Chapter shall be exclusive, compulsory, and obligatory....
"Civil service and workers' compensation programs address entirely different public and individual concerns; therefore, the applicability of civil service rules, aimed at protecting workers from political abuses, has no bearing upon a worker's rights to reparation for bodily injury under tort and workers' compensation laws." Roberts v. Sewerage and Water Bd. of New Orleans, 92-2048, p. 19 (La.3/21/94), 634 So.2d 341, 351. As we shall see, in the discussion that follows, there is no conflict in the present case in the application of Romagosa's civil service and workers' compensation rights.

*453 2.
The workers' compensation judge correctly found in this case, based on the showing made in the application for writs, that it was within her authority to find that Romagosa could be required to work outside of his civil service job classification but within his physical limitations, according to workers' compensation law. The issue of whether an employee, whose disability prevents him from returning to his regular job can be required to accept light duty at his regular full pay in another related job classification, is an issue arising out of the Workers' Compensation Chapter.
Louisiana Constitution Article 10, Section 16 specifically provides for a civil service system to be applicable to policemen and firemen in municipalities which have a population exceeding 13,000 and operate a regularly paid fire and municipal police department. Lafayette is one of these municipalities. Lafayette v. Comp Time for Cert. Firemen, 525 So.2d 181 (La.App. 3 Cir.1988).
The civil service system in these municipalities is classified as the municipal fire and police civil service. La.R.S. 33:2475. These civil service systems are governed by a municipal fire and civil service board, in this case the Lafayette Municipal Fire and Police Civil Service Board. La.R.S. 33:2476. The board has the authority to adopt and execute rules which have the force and effect of law. La.R.S. 33:2478.
Romagosa's apparent argument relating to Louisiana Revised Statute 33:1995 is that it creates an exception for fireman from the application of the Workers' Compensation Chapter. We fail to see how, as a legal matter, the payment of salary, or sick leave, under Louisiana Revised Statute 33:1995 has anything to do with a claim for workers' compensation benefits. The documents and exhibits presented with the writ, do not reveal whether there are any civil service rules of the LCG governing payment of salary under Louisiana Revised Statute 33:1995; regardless, civil service governs an employee's use of sick leave when he is entitled to workers' compensation benefits, and the workers' compensation judge has no jurisdiction over the issue of sick leave. Moses v. Grambling State University, 33,185 (La. App. 2 Cir. 5/15/00), 762 So.2d 191, writ denied, 00-1769 (La.9/22/00), 768 So.2d 1285. The legislature intended the benefits payable under Louisiana Revised Statute 33:1995 as benefits earned by virtue of past services rendered. Walters v. General Accident & Fire Assur. Corp., Ltd., 119 So.2d 550 (La.App. 1 Cir.1960). By Acts 1966, No. 165, the legislature added Louisiana Revised Statute 33:1995.1 to provide that "[a] fireman employed by any municipality, parish or fire protection district who draws full pay during sickness or incapacity shall have such pay decreased by the amount of worker's compensation benefits actually received by the employee." This statute simply gives the municipality which chooses to pay workers' compensation benefits to an injured employee the right to a credit for such benefits against the sick pay benefits that it owes to the employee in any event. Ray v. City of New Orleans, 284 So.2d 83 (La.App. 4 Cir.), writ denied, 286 So.2d 661 (La.1973). If an injured fireman qualifies by sickness or disability, he may be entitled to both with the statutory credit; if he does not qualify for either, he is entitled to neither. Romagosa was assigned to light duty that he could perform, albeit in a different classification, but he still got the benefit of full pay based on the job classification that he retained but could not perform.
Certain citations and general observations can be found in a recent case *454 from this circuit, McCain v. City of Lafayette, 98-1902 (La.App. 3 Cir. 5/5/99), 741 So.2d 720, writ denied, 99-1578 (La.9/17/99), 747 So.2d 563, cert. denied, 528 U.S. 1118, 120 S.Ct. 939, 145 L.Ed.2d 817 (2000) which are helpful in the analysis of the issues before us. One such general observation is that a classified city employee has the same right to assert entitlement to damages for tortuous conduct as one employed by a private employer. Id. Obviously, the same right exists to assert workers' compensation benefits. McCain was a case seeking remedies for an alleged discriminatory removal; it found that a civil service board may have subject matter jurisdiction to award certain damages in a given case, such as loss of sick and vacation leave, health insurance, and retirement benefits, while a district court will have jurisdiction to award general damages and loss of business reputation in the same case. Id. Stated another way, although their jurisdictions are never concurrent, they may exercise subject matter jurisdictions within their respective spheres over the same operative set of facts. These propositions should equally apply in the exercise of an injured civil servant worker's claim for workers' compensation benefits.
Romagosa's application for writs has not called to our attention any statute or civil service rule which forbids the temporary reassignment of an injured civil servant seeking workers' compensation outside his job classification. We do not have before us a transcript of the Board hearing; all we have been furnished is the letter requesting a hearing, and the brief but clear factual findings and the text of the decision of the Board. That decision is not before us for review, but we note that indisputably the Board's decision was very limited in scope; it found merely that the light-duty assignment was not within Romagosa's classification as a fire captain. Significantly, it did not find that the assignment was discriminatory, nor did it find that the fire chief lacked just and legal cause for the assignment to light duty. It took no affirmative action in its decision and did not fashion any kind of relief for Romagosa. In his letter requesting a hearing, Romagosa alleged discrimination, but he did not allege the context of the discrimination. He did not allege that there was an improper reassignment, although we are vaguely left to assume that there was. He alleged it was done in violation of civil service laws, but we are not told what laws have been broken. We are left to merely assume that there can never be any just and legal cause, even in a workers' compensation context, for assigning an injured civil servant to light-duty work outside his job classification. We reject that notion. To find otherwise would require us to judicially amend Louisiana Revised Statutes 23:1221 to provide a different set of proof requirements for civil servants to establish their right to workers' compensation benefits.
We likewise have been cited no statutory or jurisprudential authority telling us that working outside his job classification is per se a violation of a civil servant-workers' compensation claimant's constitutional property right in that classification. By certifying his inability to work within his job classification in a Form 1008 demand for workers' compensation benefits, the claimant has effectively removed himself from doing the work of his job classification. As we understand from the information we have before us in this writ, the claimant still enjoys the same classification, the same job description, the same title, and the same pay. All that has been changed is a temporary assignment to a different but related job classification, the temporal duration of which can never be longer than his eligibility for workers' *455 compensation benefits. Our supreme court recently said
Looking at the workers' compensation system as a whole, temporary total disability benefits are designed to eventually convert to either permanent total or partial disability benefits, La.Rev.Stat. 23:1221(1)(d), or supplemental earnings benefits, La.Rev.Stat. 23:1221(3)(a), or simply to cease if the employee returns to work without disability, La.Rev.Stat. 23:1221(1)(b). Both supplemental earnings benefits and permanent partial disability benefits have specific time frames that provide how long the benefits will continue. See La.Rev.Stat. 23:1221(3)(d) & 23:1221(4).... An employer can challenge a claimant's claim to workers' compensation benefits at any time, with the burden on the claimant "by clear and convincing evidence, unaided by any presumption of disability" to establish their right to the benefits. See La.Rev. Stat. 23:1221(2)(c); La.Rev.Stat. 23:1221(1)(c); La.Rev.Stat. 23:1221(3)(c)(iii).
Wal-Mart Stores, Inc. v. Parthena Keel, 01-3013, p. 14 (La.4/3/02), 817 So.2d 1, 10. There is nothing indicated in the law or the facts of this case to suggest that Romagosa as a civil servant enjoys a lesser burden of proof to establish his rights to workers' compensation benefits than would an injured employee of a private employer.

LCG'S WRIT APPLICATION
The third in limine ruling of the workers' compensation judge was that the letter written to the LCG by Romagosa's attorney on May 29, 2001, was not admissible as evidence on the issue of whether LCG was arbitrary and capricious in terminating benefits. The letter states, "We suggest that Captain Romagosa should either be paid workers' compensation benefits or sick leave pay until he is fully released by his physician to full duty as a Fire Captain."
The LCG's position is that after receiving this letter on June 1, 2001, it advised the fire chief to send Romagosa home, and he was paid sick leave. LCG takes the position that it terminated workers' compensation benefits at that time because it interpreted the letter as a refusal by Romagosa to work in an available light-duty job, contrary to workers' compensation law. Arguing that it allowed Romagosa to stay home and collect sick leave, which was one of the options demanded by him in the May 29, 2001 letter, LCG contends that it should be allowed to put the letter in evidence as a defense to the allegation that it was arbitrary and capricious in terminating the workers' compensation benefits.
The workers' compensation judge's reason for refusing to allow the letter into evidence was that admission of the letter would involve inseparably intertwined issues of civil service and workers' compensation. We disagree with this assessment of the admissibility question.
The only issue before the workers' compensation court is whether LCG was arbitrary and capricious in terminating benefits. LCG maintains that its decision to terminate was made because of the letter. This is a factual determination to be made by the trial judge. Unless it can introduce the letter, it will be unable to show why it terminated benefits and it will be deprived of its defense that its action was not arbitrary and capricious. Therefore, the letter is relevant evidence. La.Code Evid. arts. 401 and 402.
Introduction of the letter will in no way invade the jurisdiction of the civil service board. Its introduction and use is not to make decisions about civil service matters. It is the trial court's job to determine LCG's liability for penalties and attorney's *456 fees, and LCG's justification for terminating benefits is one of the factual elements necessary for the judge to weigh and decide this liability. The letter is clearly admissible.
Although it was not a reason for the trial judge's ruling, Romagosa argues in brief that the letter is inadmissible for the independent reason that the letter was an offer of settlement and that the trial court's ruling can be supported for that reason. We reject this argument. Romagosa was paid sick leave benefits after LCG received the letter. His workers' compensation claim was filed after LCG paid sick leave benefits. If the letter is found to have been in fact a settlement offer, LCG ought to be allowed to defend its actions with proof that the offer was accepted by the payment of sick leave benefits. Under those circumstances, the letter would still be relevant and admissible.

JUDGMENT IN WCW01-1600
For the reasons first discussed above, and because there is no error in the trial court's ruling, this WRIT application is DENIED.
NOTES
[1] This statute reads: "Every fireman in the employ of a municipality, parish or fire protection district to which this Sub-part applies, shall be entitled to full pay during sickness or incapacity not brought about by his own negligence or culpable indiscretion for a period of not less than fifty-two weeks." The Subpart deals with minimum wages and maximum hours.