898 So.2d 351 (2005)
Ron JOHNSON
v.
MARRERO-ESTELLE VOLUNTEER FIRE COMPANY NO. 1.
No. 2004-CC-2124.
Supreme Court of Louisiana.
April 12, 2005.
*352 Gaudry, Ranson, Higgins & Gremillion, LLC, Gregory Gilmore Gremillion, Michael *353 Don Peytavin, Gretna, David Duke Kervin, Jr., New Orleans, for Applicant.
McCranie, Sistrunk, Anzelmo, Hardy, Maxwell & McDaniel, Michael Thomas Tusa, Jr., Andre' Jude Lagarde, Metairie, for respondent.
Alvin Bordelon, Jr., New Orleans, for amicus curiae Harvey Volunteer Fire Company Number 1, Live Oak Manor Volunteer Fire Department, Terrytown-Fifth District Volunteer Fire Department, Inc., David Crockett Steam Fire Company No. 1, Marrero-Harvey Volunteer Fire Company No. 1, Bridge City Volunteer Fire Company No. 1, Avondale Volunteer Fire Company.
D. Michael Dendy, Gretna, for amicus curiae Nine Mile Point Volunteer Fire Company.
Louis Gerard Gruntz, Jr., Harahan, for amicus curiae, Jefferson Parish.
Debra Gail Miller, Harahan, for amicus curiae, East Bank Consolidated Special Service Fire Protection District.
Louis L. Robein, Jr., for amicus curiae, Louisiana Professional Firefighters Association, Jefferson Parish Professional Firefighter Association Local 1374, New Orleans Firefighters Association Local 632.
VICTORY, J.
We granted this writ application to determine whether La. R.S. 33:1995 requires a volunteer fire company under contract with a parish government fire protection district to pay sick leave benefits for injuries to firefighters that occur off duty. After reviewing the record and the applicable law, we affirm the judgment of the court of appeal and hold that La. R.S. 33:1995 applies to off-duty, as well as on-the-job, injuries.

FACTS AND PROCEDURAL HISTORY
Marrero-Estelle Volunteer Fire Co. No. 1 ("Marrero-Estelle") is a Louisiana not-for-profit corporation under contract with a Jefferson Parish Fire Protection District to provide fire protection services to the district. Marrero-Estelle is comprised of both paid full-time firefighters and volunteers. Ron Johnson ("Johnson") is a full-time paid firefighter for Marrero-Estelle and has been for 20 years. Johnson was injured off the job on July 5, 2002, when he fell off the roof of his house. He filed suit alleging, among other things, that Marrero-Estelle owed him sick leave benefits under La. R.S. 33:1995 for this off-duty injury.
Marrero-Estelle filed an exception of no cause of action under La. R.S. 33:1995 alleging that the statute does not apply to off-duty injuries. On March 30, 2004, the trial court issued an order and reasons granting the exception. The trial court reasoned that because La. R.S. 33:1995.1 allowed an offset of sick leave benefits paid under La. R.S. 33:1995, and because worker's compensation was only available for on-duty injuries, then La. R.S. 33:1995 must likewise be limited to on-duty injuries. The trial court also reasoned that allowing sick leave benefits for off-duty injuries would be tantamount to a donation of public funds which is prohibited by La. Const. Art. VII, § 14. The court of appeal reversed, finding that Johnson's petition stated a cause of action for sick leave pay under La. R.S. 33:1995 and remanded the matter to the trial court for further proceedings. Johnson v. Marrero-Estelle Volunteer Fire Co. No. 1, 04-4741 (La.App. 5 Cir. 5/20/04). We granted Marrero-Estelle's writ application to determine if La. R.S. 33:1995 requires it to pay sick leave benefits for off-duty injuries. Johnson v. Marrero-Estelle Volunteer Fire Co. No. 1, 04-2124 (La.12/17/04), 888 So.2d 849

*354 DISCUSSION
In New Orleans Firefighters Ass'n v. Civil Service Com'n of City of New Orleans, 422 So.2d 402, 412 (La.1982), we held that the provisions of La. R.S. 33:1991, et seq. are "remedial and humanitarian in purpose and must not be interpreted narrowly." We described the "motive and purpose" behind these laws was "plainly to make effective [the legislature's] conception of public policy that substandard labor conditions in city, parish and other local fire departments should be eliminated as being injurious to the safety and welfare of the public as well as detrimental to the health, efficiency and morale of firefighters." Id.
La. R.S. 33:1995 provides:
Every fireman in the employ of a municipality, parish or fire protection district to which this Sub-part applies, shall be entitled to full pay during sickness or incapacity not brought about by his own negligence or culpable indiscretion for a period of not less than fifty-two weeks.
The initial inquiry in this case is whether La. R.S. 33:1995, which applies to "Every fireman in the employ of a municipality, parish or fire protection district ...," applies to Marrero-Estelle, a volunteer fire company under contract with a fire protection district. We find that it does. La. R.S. 33:1991, which provides the definition section for "Subpart B," which includes La. R.S. 33:1995, defines a fireman as follows: "(1) The word `fireman,' as used in this Subpart includes ... employees of nonprofit corporations under contract with a fire protection district or other political subdivision to provide such services,..." As the court held in Terrytown Fifth Dist. Volunteer Fire Dept., Inc. v. Wilcox, 97-322 (La.App. 5 Cir. 1/14/98), 707 So.2d 449, writ denied, 98-381 (La.3/27/98), 716 So.2d 890, the clear legislative intent of the legislative amendment in 1991 of La. R.S. 33:1991(A), which included companies such as Marrero-Estelle within the definition of "fireman," was to also make the provisions of La. R.S. 33:1995 applicable to such volunteer fire departments.[1] See also Wilcox v. Terrytown Fifth District Volunteer Fire Department, Inc., 897 F.2d 765 (5th Cir.1990), cert. denied, 498 U.S. 900, 111 S.Ct. 256, 112 L.Ed.2d 214 (1990) (holding that a volunteer fire department under contract with Jefferson Parish Fire Protection District No. 5 was a public agency for purposes of the federal Fair Labor Standards Act because it was an "agency of a political subdivision.")
The main issue in this case, however, is whether La. R.S. 33:1995 requires Marrero-Estelle to pay sick leave benefits for off-duty injuries. Marrero-Estelle argues that the phrase "in the employ" included within the sentence "[e]very fireman in the employ of a municipality, parish or fire protection district to which this Sub-part applies, ..." means that the fireman must be injured while in the course and scope of his employment in order to receive the benefits provided under the statute. Marrero-Estelle points out that La. R.S. 33:1995 was enacted in 1942, when lawmakers did not use the same language in defining on-the-job injuries as they do today, and cites to several cases from that era where phrases like "in the employ" were used to describe whether a claimant's injury was job related.[2] Marrero-Estelle further argues *355 that to interpret "in the employ" to mean only "employed by" would be redundant, as without the phrase "in the employ," the sentence would still cover a "fireman of a municipality, parish or fire protection district ..." Thus, it argues that "in the employ" has to mean something more, and it must mean in the course and scope of his employment. Conversely, Johnson cites several cases and statutes from that time period which used the term "in the employ" to mean employed by, and others which used the phrase "course and scope of employment"[3]
We do not agree with Marrero-Estelle's argument that a "fireman" necessarily means an employee of a fire department such that "in the employ" must mean "in the course and scope of his employment." In our view, an interpretation of "in the employ" to mean "employed by" does not make that term redundant. La. R.S. 33:1995 only applies to "a fireman in the employ of a municipality, parish or fire protection district to which this Sub-part applies." Thus, neither a fireman who serves on a voluntary basis, nor a fireman employed by the state fire marshal, nor a fireman employed by a non-governmental entity (such as an oil refinery) is afforded statutory sick leave under La. R.S. 33:1995. Therefore, because there are certainly firemen in the employ of entities other than the entities covered by this statute, an interpretation of "in the employ" which limits the coverage of this statute to certain entities is a fair and reasonable interpretation of this statute. Further, it is in accordance with this Court's mandate that the provisions of La. R.S. 33:1991, et seq., are remedial and humanitarian and not to be interpreted narrowly. New Orleans Firefighters Ass'n v. Civil Service Com'n of City of New Orleans, supra.
Further, other courts that have directly addressed this issue have found that La. R.S. 33:1995 applies to off-duty injuries, as long as they are not caused by the plaintiff's own negligence or culpable indiscretion. Brumfield v. Department of Fire, 569 So.2d 75 (La.App. 4 Cir.1990) (holding that plaintiff was entitled to sick leave benefits under La. R.S. 33:1995 during his treatment for substance abuse); Ziegler v. Department of Fire, 426 So.2d 311 (La.App. 4 Cir.), writ denied, 441 So.2d 752 (La.1983) (holding that plaintiff was entitled to sick leave benefits under La. R.S. 33:1995 during his rehabilitative period for alcoholism). In fact, this Court, in a case involving a municipal ordinance seeking to prohibit its firemen from "moonlighting," has directly stated that La. R.S. 33:1995 "provides that all firemen shall be entitled to full pay during sickness or incapacity for a period of not less than fifty-two weeks, regardless of whether the sickness or incapacity is connected with their work as firemen." City of Crowley Firemen v. City of Crowley, 280 So.2d 897, 899, n. 4 (La.1973) (emphasis added). In that case, the City argued that the ordinance was justified because under La. R.S. 33:1995, *356 the City would possibly be subjected to liability for sick pay resulting from an incapacity or illness sustained while the employee was engaged in the performance of outside work. The Court rejected this argument, "primarily because it is founded on a faulty premise. Leisure activity may well be, and often is, just as risky as the occupational hazards incident to a wide range of jobs." Id.[4]
Marrero-Estelle also argues, and the trial court found, that La. R.S. 33:1995.1, which provides that "[a] fireman employed by any municipality, parish or fire protection district who draws full pay during sickness or incapacity shall have such pay decreased by the amount of worker's compensation benefits actually received by the employee," necessarily requires that La. R.S. 33:1995 be interpreted to cover only work-related injuries or sicknesses. They reason that because worker's compensation benefits are only available to those who are injured while on duty and payments of those benefits directly reduce the payments available under La. R.S. 33:1995, it follows that La. R.S. 33:1995 also applies to injuries sustained only while on duty. To the contrary, we find no language in La. R.S. 33:1995.1 which restricts the benefits granted in La. R.S. 33:1995. We agree with the court of appeal, which rejected Marrero-Estelle's argument, stating:
... we find that La. R.S. 33:1995.1 is simply a setoff provision that reduces a firefighter's sick leave pay by any worker's compensation payment he might be receiving. Section 1995.1 was enacted to prevent double recovery as sick leave pay and worker's compensation for work missed due to the same injury, not to restrict sick leave benefits to only on-duty injuries.
Slip Op. at p. 3; see also Ray v. City of New Orleans, 284 So.2d 83 (La.App. 4 Cir.), writ denied, 286 So.2d 661 (La.1973) (holding that La. R.S. 33:1995.1 "simply gives the municipality which chooses to pay workmen's compensation benefits to an injured employee the right to a credit for such benefits against the sick pay benefits that it owes to the employee in any event.")[5] In addition, La. R.S. 33:1995.1 has no application to this case, which involves an off-the-job injury for which worker's compensation benefits are not recoverable.
Further, we think one of the strongest indications that La. R.S. 33:1995 is not restricted to on-the-job injuries is the fact that La. R.S. 33:1995 applies to "sickness," as well as incapacity. There are not many *357 sicknesses that can be said to be employment related, other than heart and lung disease which could be contracted as a result of exposures during firefighting work. However, heart and lung diseases are explicitly covered by La. R.S. 33:2581.[6] For every other type of sickness, such as the flu, while a fireman may suffer from it while he is at work, the sickness would generally not arise in the course and scope of his employment. We find no indication that the legislature intended that the statute only apply to those sicknesses that are job related.
Marrero-Estelle next argues that La. Const. Art. VI, § 14 precludes the increased and unfunded expenditures associated with awarding sick leave benefits to firefighters injured off duty.[7] We disagree.
The legislative power of the state is vested in the Legislature. La. Const. Art. 3, § 1. This Court has recognized that La. Const. Art. VI, § 14 acts as a limitation upon the otherwise plenary lawmaking power of the Legislature recognized by Art. 3, § 1. New Orleans Firefighters Ass'n, supra at 406. La. Const. Art. VI, § 14(A) provides:
§ 14. Increasing Financial Burden of Political Subdivisions
Section 14. (A) No law or state executive order, rule, or regulation requiring increased expenditures for any purpose shall become effective within a political subdivision[[8]] until approved by ordinance enacted, or resolution adopted, by the governing authority of the affected political subdivision or until, and only as long as, the legislature appropriates funds for the purpose to the affected political subdivision and only to the extent and amount that such funds are provided, or until a law provides for a local source of revenue within the political subdivision for the purpose and the affected political subdivision is authorized by ordinance or resolution to levy and collect such revenue and only to the extent and amount of such revenue. This Section shall not apply to a school board.
In 1991, Section (B) was added, providing, among other things, that "[t]his section shall not apply to ... (5) a law providing for civil service, minimum wages, hours, working conditions, and pension and retirement benefits, or vacation or sick leave benefits for firemen and municipal policemen." Before the 1991 amendment, La. Const. Art. VI, § 14 acted as a prohibition against the legislature, by virtue of La. R.S. 33:1995, requiring municipalities to pay sick leave benefits to firemen for off-duty injuries, in the absence of a legislative appropriation of funds for such purpose or a local ordinance authorizing such payments. Jefferson Parish Firefighters Ass'n Local 1374 AFL-CIO v. Parish of Jefferson, 579 So.2d 1062 (La.App. 5 Cir.), writ denied, 587 So.2d 695 (La.1991). In *358 Jefferson Parish Firefighters, the court recognized that Jefferson Parish had an ordinance pertaining to special sick leave but the fireman must be injured while on duty.[9] Thus, in the absence of legislative funding, La. Const. Art. VI, § 14 prevented the payment of sick leave benefits to the injured fireman for his off-duty injuries.
However, by virtue of the 1991 amendment adding section (B)(5), the Legislature has made an express exception from the limitations of La. Const. Art. VI, § 14 for laws providing for sick leave benefits for firemen. We have to assume that this was a considered judgment by the Legislature that the increased benefits provided by La. R.S. 33:1995 could be mandated on political subdivisions, even in the absence of legislative appropriation or parish ordinance.[10] Thus, we find that La. Const. Art. VI, § 14 does not bar the payment of sick leave benefits for plaintiff's off-duty injury under La. R.S. 33:1995.
Finally, plaintiff argues that payment of sick leave benefits for off-duty injuries is barred by La. Const. Art. VII, § 14, which provides in pertinent part:
§ 14. Donation, Loan, or Pledge of Public Credit
Section 14. (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. Except as otherwise provided in this Section, neither the state nor a political subdivision shall subscribe to or purchase the stock of a corporation or association or for any private enterprise.
La. Const. Art. VII, § 14(A) is violated whenever the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so. City of Port Allen, Louisiana v. Louisiana Mun. Risk Management Agency, Inc., 439 So.2d 399 (La.1983).
We find that the payment of sick leave benefits to firemen for off-duty injuries or sickness pursuant to La. R.S. 33:1995 is *359 not a loan, pledge or donation of public property in violation of Art. VII, § 14. These sick leave benefits are not a gift, but rather a legislatively created benefit, earned by virtue of the employment itself. This Court has previously recognized the plenary power of the Legislature to provide benefits for fireman, that these benefits are remedial and humanitarian in purpose and must be construed broadly. New Orleans Firefighters, supra. Thus, we agree with the court of appeal's determination that La. R.S. 33:1995 does not provide for a "donation" of funds, but rather is a "considered decision by the Legislature to afford firefighters, who put their lives at risk for the public good, a job benefit in the nature of sick leave pay."[11] 04-4741, supra, p. 4.

CONCLUSION
La. R.S. 33:1995 entitles a fireman, as defined in La. R.S. 33:1991(A)(1), to full pay during any sickness or incapacity, whether suffered in the course and scope of his employment, or suffered off duty, as long as the sickness or incapacity was not brought about by his own negligence or culpable indiscretion. We find that this statute represents a considered judgment of the Legislature that, because of the risks and sacrifices firefighters make for the public good by virtue of their employment, they are entitled to liberal sick leave benefits. While there are some who might question the reasonableness of granting such extensive sick leave benefits for off-duty injuries, the Legislature has the power to enact such laws in accordance with their plenary power to govern the employment benefits of firemen, and this Court must interpret the law as written.[12]

DECREE
For the reasons expressed herein, the judgment of the court of appeal is affirmed.
AFFIRMED.
NOTES
[1] Act No. 1000 amended and reenacted La. R.S.1991(A) and 33:2002(A) "to provide extra compensation to employees of nonprofit corporations contracting with a fire department or fire protection district to provide firefighting and fire protection services; ..."
[2] Marrero-Estelle relies on Barrett v. Wilson, 150 So. 458 (La.App. 2 Cir.1933); Courmier v. Superior Oil Company, 60 F.Supp. 542 (W.D.La.1945); Light v. Connecticut Gen. Life Ins. Co., 35 F.Supp. 691 (W.D.La.1940); United Production Corporation v. Chesser, 107 F.2d 850 (5th Cir.1939).
[3] Johnson relies on La. R.S. 33:1967(A); La. R.S. 11:3202; La. R.S. 11:3235; La. R.S. 11:3404(3); La. R.S. 11:3135; La. R.S. 32:853(A)(6)(a); Haywood v. Noel, 154 So. 484 (La.App.Orleans 1934); Maddox v. Pattison, 186 So. 894 (La.App. 2 Cir.1938); Sams v. Great Nat. Oil Corp., 5 So.2d 349 (La.App. 2 Cir.1941); Dilworth v. Hebert, 7 So.2d 626 (La.App. 1 Cir.1942); Rhinehart v. T. Smith & Son, 14 So.2d 287 (La.App.Orleans 1943); Caldwell v. Unity Ind. Life Ins. Co., 17 So.2d 757 (La.App. 2 Cir.1944); Smith v. McMichael, 30 So.2d 205 (La.App. 2 Cir.1947).
[4] The Court recognized that the firemen had submitted a proposed set of rules to the City in recognition of the fact that outside employment could interfere with the performance of their duties in certain circumstances. Among the proposals was that any employee holding outside employment must sign a waiver of sick leave time for any lost time caused by the outside employment. We have no occasion at this time to rule on the validity of such a waiver.
[5] That court reasoned that "the legislature wished to provide an incentive to municipalities to make early workmen's compensation settlements with injured firemen." Id. The court pointed out that the municipality would owe sick pay under La. R.S. 33:1995 "regardless of the cause of the incapacity in most instances [excepting negligence or culpable indiscretion]," so when faced with a clear obligation to pay sick pay under La. R.S. 33:1995, and with the decision of whether the sickness or injury is also compensable under workers' compensation, "it would behoove the municipality to give the employee the benefit of the any doubt and to pay workers' compensation, thereby getting the benefit of the credit against sick pay `of the amount of workmen's compensation benefits actually received by the employee.'" Id.; see also Romagosa v. Lafayette City-Parish Consolidated Government, 01-1600 (La.App. 3 Cir. 5/29/02), 824 So.2d 448, writ denied, 02-1823 (La.10/4/02), 826 So.2d 1131.
[6] These types of diseases are covered by La. R.S. 33:2581, which provides that any disease or infirmity of the heart or lungs which develops during a period of employment is an occupational disease entitling the fireman to all the appropriate benefits and creates a presumption that any such disease which manifests itself after five years of employment is presumed to have developed because of such employment.
[7] We note that firemen also accrue sick leave benefits based on the length of time they have been employed. Marrero-Estelle's own sick leave policy provides that a firefighter accrues nine sick days per year and can accumulate up to 30 sick days over his career.
[8] We will assume, for purposes of this argument, that this article applies in this case, where it is not a political subdivision, but a not-for-profit corporation under contract with a fire protection district of a political subdivision, that is being required to make the increased expenditures.
[9] This ordinance, Parish Ordinance No. 15135, Section 4.2, provides in part as follows:

In addition to the sick leave accumulation provided in Section 3 above, each uniformed firefighting employee who, as a normal duty requirement, may be required to engage in firefighting or fire prevention, or, as part of his duties, be required to be in attendance on the scene of a fire, (as distinguished from support services such as custodial, record keeping, etc.) shall be granted a `bank' of fifty-two (52) calendar weeks of special sick leave to be used only in cases of injuries sustained while on duty, if such injuries are compensable under State workman compensation laws.
[10] We reject Marrero-Estelle's argument that another section of La. Const. Art. VI, § 14, Section (B)(3), which provides that the limitations imposed by La. Const. Art. VI, § 14(A) would not apply to "a law enacted and effective prior to the adoption of the amendment of this Section by the electors of the state in 1991" governs this issue. Marrero-Estelle argues that § 14(B)(3) provides an exception to the new provisions in Art. VI, § 14(B)(5) for sick leave laws in effect prior to the 1991 amendment of La. Const. Art. VI, § 14. Jefferson Parish Code Section 23-15, et seq., was in effect prior to 1991 and Section 23-15(a) attempts to place the same spending restrictions on the Legislature that the pre-amendment constitutional article provided, i.e., it requires that no state law requiring increased expenditures for sick leave shall become effective until approved by ordinance or the legislature appropriates funds. However, we find that Jefferson Parish Code Section 23-15 is not a "law" for purposes of La. Const. Art. VI, § 14(B)(3). Had the legislature intended Section (B)(3) to include parish ordinances, it certainly would have said so, as La. Const. Art. VI, § (A) is based entirely on the premise that state laws requiring increased expenditures by political subdivisions are not effective unless appropriated by the legislature or approved by parish "ordinance or resolution."
[11] In addition, even if this were considered a "donation," La. Const. Art. VII, § 14(A) expressly does not apply to laws authorizing such donations which were on the books before this 1974 Constitution was adopted. As La. R.S. 33:1995 was enacted in 1942, it clearly qualifies as a "prior obligation" under La. Const. Art. VII, § 14(D), which provides:

(D) Prior Obligations. Funds, credit, property, or things of value of the state or of a political subdivision heretofore loaned, pledged, dedicated, or granted by prior state law or authorized to be loaned, pledged, dedicated, or granted by the prior laws and constitution of this state shall so remain for the full term as provided by the prior laws and constitution and for the full term as provided by any contract, unless the authorization is revoked by law enacted by two-thirds of the elected members of each house of the legislature prior to the vesting of any contractual rights pursuant to this Section.
[12] Marrero-Estelle posits examples of what it suggests is the unreasonableness of such an interpretation, such as a fireman being injured off duty after only one day of work and being entitled to 52 weeks of sick leave benefits, or six firemen being injured together on one day and all being entitled to 52 weeks sick leave. But there are many other examples of what some might describe as legislative beneficence in the area of sick leave, e.g., La. R.S. 33:2214 regarding sick leave for city police officers. These thoughtful legislative determinations of public employees' entitlement to leave cannot so casually be dismissed as "unreasonable." And incidentally, in this case, we have a 20-year veteran seeking four months sick leave for an off-duty injury, not the cited example of a fireman on his first day of work.

Further, as the plaintiff conceded at oral argument, the application of the statute is significantly limited because this benefit is only available if the sickness or incapacity is not "brought about by [the fireman's] own negligence or culpable indiscretion." This issue is not currently before the court.